Filed 6/17/25  P. v. Gosal CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>GURPREET GOSAL,<br><br>    Defendant and Appellant. | C098723<br><br>(Super. Ct. No. 08F07142) |

Defendant Gurpreet Gosal[1] appeals the trial court's denial of his petition for resentencing following an evidentiary hearing.  (Pen Code,[2] § 1172.6, subd. (d).)[3]

---

[1]    Defendant's name is listed as both "Gurpreet Gosal" and "Gurpreet Singh Gosal" in the record.  We use defendant's name as it appears on the resentencing order being appealed.

[2]    Further undesignated section references are to the Penal Code.

[3]    Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the

1

Defendant asks this court to employ an independent standard of review given the case was decided on a cold record. He argues that, under either an independent or substantial evidence standard, the record is lacking in sufficient proof he aided and abetted implied malice murder. He also argues the trial court's failure to directly address his self-defense claim in its written ruling requires reversal. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, a jury found defendant guilty of the second degree murder of P.S., also known by his nickname Poma, but not guilty of the attempted murder or attempted voluntary manslaughter of S.S. The jury also found true the allegations that defendant personally and intentionally used a firearm in the commission of the murder, but found not true the allegation that his discharge of the firearm proximately caused Poma's death. The trial court sentenced defendant to 15 years to life plus 20 years. Another panel of this court affirmed this judgment in 2015. (*People v. Gosal* (June 9, 2015, C074473) [nonpub. opn.].)

The trial court initially denied defendant's 2019 petition for resentencing, finding defendant failed to state a prima facie case for relief. (*People v. Gosal* (Dec. 2, 2021, C093052 [nonpub. opn.].) Following defendant's appeal, another panel of this court reversed the trial court's order and remanded the matter for a section 1172.6, subdivision (d) evidentiary hearing. (*Gosal*, *supra*, C093052.)

At the evidentiary hearing, the parties introduced into evidence the trial transcripts, as well as the court's file. The prosecution argued those transcripts showed defendant was presently guilty of aiding and abetting murder under either express or implied malice theories. Defendant disagreed, urging the court to focus on the testimony of A.M., A.S., and defendant, which he asserted established he acted in self-defense.

_____

statute. Although defendant filed his petition under former section 1170.95, we cite to the current section number throughout this opinion.

2

# I

## *The Trial Testimony*

Defendant was friends with Amandeep Dhami, who was involved in a dispute with Poma. Dhami and Poma agreed to meet to resolve their differences. Defendant flew to Sacramento to attend this meeting.

Dhami picked defendant up from the airport. Soon thereafter, they went to a gun store where Dhami gave defendant money to purchase ammunition. Defendant purchased boxes of ammunition of various calibers, and Dhami took the bag containing the ammunition.

At some point, Poma canceled the meeting leading to several heated phone conversations over the course of the evening between Poma and Dhami.

Defendant originally planned to fly home the day after the scheduled meeting. However, defendant changed his flight plans, purportedly because his ride to the airport fell through. Instead, defendant went with Dhami to a festival being held at a religious temple. Defendant drove Dhami's car, while Dhami talked on the phone. When they arrived, defendant parked perpendicular between two rows of cars, attracting attention.

A witness who saw defendant park the car testified he saw the men open the rear passenger doors as if retrieving something, close the doors, and then walk towards the fields. No more than 10 minutes later, the witness heard gunshots. Shortly thereafter, he saw people chasing defendant and yelling at him.

M.M. was at the festival with Poma, A.K., and S.S. M.M. noticed Dhami and defendant when they were about 10 to 12 feet away from the group; defendant was at Dhami's side. Dhami loudly and angrily cursed at Poma, insulting Poma's sister. Dhami then asked, "[N]ow where do you want to go?" (Italics omitted.) Poma did not respond, and Dhami drew a revolver from his pants and fired at A.K. and Poma. To keep people from helping, defendant also pulled a gun and shot at the group and the crowd. M.M.

3

saw Poma bleeding on the ground near a gun. Poma was shot in the lower abdomen, causing his death. M.M. did not see Poma with a gun before or during the shooting.

S.S. testified he saw a gun in Dhami's hand and then he fell to the ground because his legs stopped working. S.S. was shot above his left hip and his injuries required surgery to stabilize his spine.

A.K. also saw Dhami and defendant approach the group. Dhami cursed at the group and Poma in particular, calling him a "sister fucker" in Punjabi. A.K. warned Dhami to watch his mouth, and Dhami drew a gun and started shooting. A.K. tried to grab Dhami, but Dhami kept shooting. Within seconds of the first shot, defendant also began shooting and at one point aimed directly at A.K. Defendant then ran away towards the parking area. A.K. did not see Poma with a gun.

A.M., who was at the festival, heard a shot and saw defendant shooting a gun. A.M. testified defendant was waving the gun in a back-and-forth motion in the direction of a group of men, but aiming it at a downward angle. A.M. did not see defendant aim the gun at anyone. Defendant then ran away through the parking lot and over a barbed wire fence.

A.S., who was also at the festival, heard "fighting words" being exchanged in Punjabi about 30 to 40 feet away from him. To A.S., it looked like an exchange between two groups of two people that escalated into punches before two of them started firing guns at the others. A.S. heard four to six shots and saw one of the unarmed men get shot and fall to the ground. A.S. did not see any other guns.

Defendant was detained first by the crowd and then by county sheriffs. A receipt from a gun shop was found in defendant's clothes showing purchases of four of the five ammunition boxes recovered from a black backpack left in the parking lot of the festival. Several of the boxes were missing rounds of ammunition. Three handguns and keys to Dhami's car were recovered from various places in the festival grounds. Ammunition recovered from the guns matched ammunition found in the black backpack.

4

Defendant testified at his initial trial denying he murdered Poma, attempted to murder S.S., or that he went to the festival armed with the intent to shoot anyone. Rather, defendant explained it was A.K. who was the aggressor, punching Dhami in the face after Dhami had greeted the group. According to defendant, this caused Dhami to draw his gun and fire several shots. Defendant also testified he may have seen another person draw a gun. In the ensuing fight, defendant testified, someone hit him and he stumbled into Dhami, who handed him a gun. Defendant testified he only fired that gun into the ground to protect himself while he fled as others hit him. While running, defendant threw the gun and keys away. Defendant denied seeing guns or ammunition in Dhami's car or that he armed himself after parking. Nonetheless, he admitted seeing a black backpack behind the passenger seat. On cross-examination, defendant admitted to lying to detectives investigating the case during three different interviews.

II

*The Trial Court's Written Ruling*

The trial court issued a written ruling finding the prosecution had established beyond a reasonable doubt that defendant was guilty of implied malice murder on a direct aiding and abetting theory. Specifically, the court found defendant aided and abetted the life endangering act of an "armed encounter with, and the shooting of, Poma and [S.S.]" In so doing, the court credited the testimony of M.M. and A.K. as being "the most compelling." According to that testimony, both Dhami and defendant opened fire at Poma's group, with A.K. testifying that defendant shot directly at him. The court found that although this alone satisfied the actus reus requirement, defendant also purchased ammunition the day before with money from Dhami, knew that Dhami had the ammunition, and was aware that Dhami had fought with Poma for hours on the phone the day before the shooting. The court discredited defendant's explanation about why he missed his original plane flight in light of defendant's admitted dishonesty to law enforcement officials. Further, the trial court credited M.M.'s and A.K.'s testimony with

5

establishing that defendant "was armed with at least one firearm when he and Dhami encountered the Poma group." The court concluded, "Against that backdrop, [defendant's] actions of driving Dhami to the festival and walking with Dhami through the festival while armed directly aided Dhami in the shooting."

As to defendant's mens rea, the trial court determined defendant knew Dhami intended to bring a gun to the encounter, again highlighting defendant's actions as previously described. Further, the court credited the witness who saw defendant park in the parking lot with establishing that defendant and Dhami either arrived at the festival already armed or they armed themselves when they accessed the rear passenger compartment of Dhami's car. Either way, defendant was aware Dhami was armed with a gun.

Further, the trial court affirmed that defendant "knew that encountering Poma with a firearm was dangerous to human life." Supporting its determination, the court noted, "There are few situations more dangerous than a purposeful armed encounter between two individuals that have open hostilities between them." While defendant was only 23 years old, he had worked as a truck driver for five years and had "enough life experience" to recognize the danger.

Finally, the trial court determined defendant "disregarded the danger to Poma's life by being an active participant in Dhami's encounter with Poma. The natural and probable consequences of [defendant] arming himself and aiding Dhami [in the] encounter [with] Poma was dangerous to human life and proximately caused Poma's death." Accordingly, the court denied defendant's petition for resentencing.

Defendant appeals.

6

## DISCUSSION

### I

*Substantial Evidence Supports The Trial Court's*

*Finding Defendant Aided And Abetted Implied Malice Murder*

Starting in 2019, the Legislature amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) It did this by amending section 188, which defines malice, and section 189, the felony-murder statute. (*Lewis*, at p. 959; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449.) The Legislature also created a procedure in what is now section 1172.6 that allows those previously convicted of felony murder or murder under the natural and probable consequences doctrine to obtain relief from their convictions if they could not be convicted of murder under the amended law. (*Curiel*, at p. 449; accord, *Lewis*, at p. 957.) Subsequently, the Legislature codified aspects of the *Lewis* decision and clarified the burden of proof and procedure at the evidentiary hearing stage of the proceedings. (Stats. 2021, ch. 551.)

Here, we are concerned with the evidentiary hearing that occurs after the trial court has determined a defendant set forth a prima facie case for relief. (§ 1172.6, subds. (a), (c), (d); *People v. Strong* (2022) 13 Cal.5th 698, 708.) At that hearing, the prosecution bears the burden of proving beyond a reasonable doubt the defendant is guilty of murder under the amended law. (§ 1172.6, subd. (d)(3).) Both parties may, but are not required to, present "new or additional evidence to meet their respective burdens." (*Ibid*.; see *People v. Njoku* (2023) 95 Cal.App.5th 27, 43-46.) Moreover, "the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).) If the court finds beyond a reasonable doubt the defendant is guilty of murder under a theory that remains valid after the amendments to sections 188 and 189, the petition is denied. (§ 1172.6, subd. (d)(3).)

Defendant first contends we should independently review this cold record case. Having already rejected this claim in *People v. Njoku*, *supra*, 95 Cal.App.5th at pages 41-43, we see no reason to revisit the issue here. We therefore will employ a substantial evidence standard of review. (*Ibid*.)

Defendant argues substantial evidence does not support the trial court's determination he aided and abetted implied malice murder. In so doing, he attacks both the trial court's actus reus and mens rea findings. We are unpersuaded.

Under the substantial evidence standard, "we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence [that] is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

"Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) " ' "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." ' " (*People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233.) Reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support the [trial court's ruling]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

"[S]econd degree murder . . . is 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction for first degree murder.' [Citation.] . . .

8

'Malice is implied when the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his [or her or their] conduct endangers the life of another and who acts with conscious disregard for life.' " [Citation.]  In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another.' " (*People v. Cravens*, *supra*, 53 Cal.4th at p. 507.)

"[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 843, quoting *People v. Perez* (2005) 35 Cal.4th 1219, 1225.)  " '[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid in the commission of the life-endangering *act*, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes*, *supra*, 14 Cal.5th at p. 991.)

We conclude substantial evidence supports the trial court's determination defendant aided and abetted a life endangering act, specifically, Dhami's armed encounter with Poma, and that defendant knew such act was dangerous to human life. (*Reyes*, *supra*, 14 Cal.5th at p. 991.)  Defendant knew of Dhami's disagreement with Poma and flew to California to be with Dhami at the meeting with Poma and his group. Shortly after arriving, defendant purchased boxes of ammunition with Dhami's money, and Dhami took possession of that ammunition, which was used in the shooting the next day.  Defendant knew that the meeting was canceled and that Dhami and Poma continued to argue into the night.  Defendant then drove Dhami to the festival and parked Dhami's car in a manner suggesting the need for a quick getaway.  Defendant and Dhami appeared

9

to take something from the backseat—presumably the black backpack containing the guns and ammunition that were later recovered by police. The pair then headed to the fields. No more than 10 minutes later, gunfire erupted.

According to the witnesses found most compelling by the trial court, defendant and Dhami approached the group together, with defendant at Dhami's side. Dhami cursed Poma before pulling out a revolver and firing at Poma. Shortly thereafter, defendant drew a gun and began firing at the group, at one point aiming directly at A.K. Thus, defendant's actions culminating in defendant's own firing of a gun at Poma's group clearly aided Dhami's confrontation of Poma. (*Reyes*, *supra*, 14 Cal.5th at p. 991.)

Moreover, considering this evidence, it was reasonable for the trial court to infer that defendant knew Dhami's armed encounter was dangerous to human life, especially considering Dhami's ongoing disagreement with Poma and possession of multiple guns and ammunition, as well as defendant's parking of Dhami's car such that he could quickly and easily leave the parking lot. (*Reyes*, *supra*, 14 Cal.5th at p. 991.) Opening fire on a group of people at close range is an inherently dangerous activity that involved a high probability of death. (*Ibid*.) Moreover, defendant consciously disregarded that danger by bringing Dhami to the festival to find and confront Poma, and by himself shooting at the group.[4] (*Ibid*.) Accordingly, defendant's challenge to the evidence supporting the trial court's determination that he was still guilty of aiding and abetting implied malice murder fails.

---

[4]    Defendant's reliance on testimony suggesting defendant may have aimed his gun into the ground—including his own discredited account—is misplaced as it ignores that we do not resolve evidentiary conflicts at the appellate stage. (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 298.) A.K. testified that defendant shot the gun directly at him. The trial court credited this testimony, and we must accept the trial court's credibility determinations. (*Ibid*.)

## II

### *The Trial Court Did Not Err By Failing To*
### *Address Defendant's Self-defense Claim*

Defendant argues the trial court's failure to explicitly address his claim of self-defense in its written ruling has "deprived" him of that defense requiring reversal. However, defendant has provided no authority, and this court is aware of none, requiring the trial court to explicitly analyze the elements of defendant's claim of self-defense in its written ruling. Rather, section 1172.6, subdivision (d)(3) requires the trial court to determine whether the prosecution has established "beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." The trial court's ruling met this requirement, determining beyond a reasonable doubt that the prosecution had established that defendant was still liable for aiding and abetting implied malice murder. Implicit in this determination is the trial court's rejection of defendant's claim of self-defense. (See, e.g., *People v. Schuller* (2023) 15 Cal.5th 237, 243-244 [imperfect self-defense operates to negate malice element necessary for murder under California law, requiring the prosecution to establish "the absence of that circumstance beyond a reasonable doubt"].) The trial court's outright rejection of defendant's testimony and the crediting of two witnesses whose testimony established that Dhami and defendant shot at Poma and his group without provocation or justification further support this determination.

Nor are we persuaded that the trial court's failure to provide a written analysis of defendant's self-defense claim is akin to a trial court's failure to instruct the jury. We presume the trial court understood and applied the law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) There is nothing in the record to suggest the trial court misunderstood defendant's assertion of self-defense. Accordingly, this claim fails.

DISPOSITION

The judgment is affirmed.

s/_____

ROBIE, Acting P. J.

We concur:

/s/_____

RENNER, J.

/s/_____

WISEMAN, J.*

_____

*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12